# United States District Court

EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| vs. | § | Case No. 4:08cr224 |
| | § | (Judge Crone) |
| DAVID ALLAN VOGEL (1) | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter having been referred by the Honorable Marcia Crone, the Court held a hearing on November 4, 2009, on Defendant's Motion for Release and Exemption from Forfeiture Funds to Pay Attorney's Fees and Defense Costs (Dkt. #133). After considering all of the relevant pleadings and the arguments of counsel, the Court finds that Defendant's motion should be denied.

### BACKGROUND

On December 10, 2008, Defendant was indicted in a two-count Indictment. Count One charged Defendant with Conspiracy to Manufacture, Distribute or Dispense or Possess with Intent to Manufacture, Distribute or Dispense a Controlled Substance all in violation of 21 U.S.C. § 846. It is alleged that Defendant, on or about August 2000 and continuing until in or about November 2007, conspired to distribute, outside the scope of professional practice and not for a legitimate medical purpose, at least 40,000 dosage units of Hydrocodone, a Schedule III controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D). Count Two of the Indictment charges Defendant with Conspiracy to Commit Money Laundering, all in violation of 18 U.S.C. § 1956(h).

The Indictment also included a Notice of Intent to Seek Criminal Forfeiture Pursuant to 18 U.S.C. §§ 981-982, 21 U.S.C. §§ 853 and 881, and 28 U.S.C. § 2461. The Indictment listed various

accounts[1] subject to forfeiture including approximately $3,756,920.61 seized from a First Republic Bank Account on or about November 13, 2007, and approximately $384,669.25 seized from a Chase Investment Services Account on or about November 13, 2007.[2]

On August 13, 2009, the First Superseding Indictment was filed which added another Defendant as well as two additional counts. Counts Three and Four charged Defendant with Engaging in a Monetary Transaction in Property Derived from Specified Unlawful Activity, in violation of 18 U.S.C. §§ 1957 and 2.

The First Superseding Indictment also included a Notice of Intent to Seek Criminal Forfeiture Pursuant to 18 U.S.C. §§ 981-982, 21 U.S.C. §§ 853 and 881, and 28 U.S.C. § 2461. The First Superseding Indictment listed various accounts subject to forfeiture including approximately $3,756,920.61 seized from a First Republic Bank Account on or about November 13, 2007, and approximately $384,669.25 seized from a Chase Investment Services Account on or about November 13, 2007.[3]

On September 9, 2009, Defendant filed his motion for release and exemption from forfeiture funds to pay attorney's fees and defense costs. On September 21, 2009, the Government filed its response opposing the request. On September 22, 2009, Defendant filed a reply. On November 4, 2009, the Court conducted a hearing on the motion. Defendant Exhibits 1-10 were admitted. On

---

[1] These same accounts are subject to seizure in civil proceedings. *See* 4:08cv15; 4:08cv138; 4:09cv601; and 4:10cv19.

[2] There were additional accounts listed in the Indictment that are subject to forfeiture that are not relevant to Defendant's motion.

[3] There were additional accounts listed in the First Superseding Indictment that are subject to forfeiture that are not relevant to Defendant's motion.

November 11, 2009, Defendant filed a post-hearing brief. On November 12, 2009, the Government filed its post-hearing brief.

Defendant seeks release of some of his seized funds for the purpose of paying for his own counsel. Specifically, Defendant requests some of the funds from his First Republic Account and his Chase Account. Defendant requests that the Court conduct a probable cause hearing for the purpose of determining whether the government can establish probable cause to believe that the seized assets are tainted, and failing that proof, Defendant requests that the Court order the release of the seized assets. The Government asserts that no probable cause hearing is required because Defendant has failed to meet his burden at this stage of the proceedings considering that two grand juries have found probable cause to seize the assets in question.

Although the parties disagree on whether a probable cause hearing is necessary in this case, they do agree that the Court should apply *United States v. Jones*, 160 F.3d 641, 645-48 (10th Cir. 1998) and *United States v. Farmer*, 274 F.3d 800, 802-805 (4th Cir. 2001) in deciding this issue. The Fifth Circuit has not decided the issue of what standard the Court should use in determining whether the Court should conduct a probable cause hearing, but the Court has cited the *Jones* and *Farmer* cases with approval.[4] The Fifth Circuit reviewed a civil forfeiture proceeding in *United States v. Melrose East Subdivision*, 357 F.3d 493 (5th Cir. 2004). The Fifth Circuit found that due process permitted the government to restrain assets needed to pay attorney's fees so long as the government demonstrated that there was probable cause to believe that the assets were subject to forfeiture. *Id.* at 505. In deciding this case, the Fifth Circuit did not decide what showing was

---

[4] *See United States v. Melrose East Subdivision*, 357 F.3d 493,499-501 (5th Cir. 2004) and *United States v. Holy Land Foundation for Relief and Development*, 493 F.3d 469, 475 (5th Cir. 2007).

3

required to trigger a due process hearing.[5]  *Id.* at 501 n.5.  Therefore, the Court adopts the standard utilized in the *Jones* and *Farmer* cases.

In *Jones*, the Tenth Circuit stated that "[w]e think the proper balance of private and government interests requires a post-restraint, pre-trial hearing but only upon a properly supported motion by a defendant. Due process does not automatically require a hearing and a defendant may not simply ask for one." *Jones*, 160 F.3d at 647.  The Tenth Circuit required two showings by a defendant before the court was required to conduct a probable cause hearing.  First, defendant must demonstrate that there are no assets, other than those subject to the forfeiture order, with which to exercise defendant's Sixth Amendment right to counsel or to pay living expenses.  *Id.*  And second, there must be a bona fide reason to believe that the grand jury erred in finding probable cause to believe that the restrained property would be subject to the forfeiture if the defendant is convicted. *Id.*  The Tenth Circuit found that defendant beared the burden of persuasion as to the first element, and the second element only required the burden of production.  *Id.*  Once a defendant satisfies these initial burdens, the district court is required to conduct an adversarial probable cause hearing where the government must establish probable cause to believe that the restrained assets are traceable to the criminal offense.  *Id.*

Now the Court must apply the *Jones* factors to the case at hand.  First, the Court must examine whether Defendant has no other assets, other than those seized assets, to pay for his own counsel.  Although this should be a simple question, the record in this case raises a more complicated

---

[5]  The Fifth Circuit did not reach the question of what threshold was necessary to force an adversarial probable cause hearing because the district judge held a hearing and the government still prevailed, rendering it "imprudent to use this case to elaborate the precise details of the circumstances and showings necessary to trigger a due process hearing–a constitutional question that we are not required to decide here." *Melrose East Subdivision*, 357 F.3d at 501 n. 5.

question regarding Defendant's ability to pay for counsel. The Court acknowledges that it approved Defendant's request for court appointed counsel. However, the process to reach that decision was not without difficulties in obtaining an accurate picture of Defendant's financial status. For instance, Defendant serves as trustee for a trust that owns his family home in New Hampshire, valued at approximately $400,000, and there has been no showing that the home could not be sold to pay for counsel. Defendant also is in possession of a coin collection valued at approximately $50,000. The Court also required Defendant to submit a financial affidavit which was submitted under seal. In an abundance of caution, the Court approved court appointed counsel, but the Court still has concerns about the true nature of Defendant's financial ability to pay for counsel.[6]

Even if the Court finds that Defendant has met the first element, he fails to satisfy his burden on the second element. Defendant must demonstrate that there is a bona fide reason to believe that the grand jury erred in finding probable cause to believe that the restrained property would be subject to forfeiture if the defendant is convicted. Defendant asserts that he met his burden as to two accounts that were seized. First, Defendant points to Exhibit 10, which reflects the Chase Investment Services Account, and the sworn declaration of Defendant to satisfy his burden. Defendant has failed to meet his burden.[7] The Chase Account was opened in 2002 or 2003, which falls within the time frame of the alleged conspiracy. Defendant also stated in his declaration that

---

[6] *See* Order No. 30 (2/5/09); Order No. 35 (2/13/09); Order No. 39 (2/18/09); Order No. 49 (4/1/09); Order No. 64 (5/19/09); Order No. 76 (6/17/09); Order No. 80 (6/24/09); Order No. 81 (6/25/09); Order No. 86 (6/30/09); Order No. 88 (7/1/09); Order No. 94 (7/9/09); Order No. 99 (7/15/09); Order No. 100 (7/16/09); Order No. 106 (7/23/09); Order No. 115 (8/10/09); Order No. 149 (11/9/09); Order No. 180 (1/15/10).

[7] At the hearing, the Court rejected Defendant's argument that he met his burden of offering some evidence that the grand jury erred.

this account "contained various shares of securities, *some of which were purchased with margin loans*." (Emphasis added). Counsel for Defendant argued that the Chase Account was "largely funded through margin account funds, loans..." Defendant has not offered sufficient evidence to show that the asset is untainted. Defendant's self-serving declaration, which states that some of the monies in this account were purchased from legitimate purposes, fails to meet the standard of a bona fide reason to believe that the grand jury erred in its decision.

Next, Defendant asserts that the seized First Republic Account included approximately $3,700,000 from the sale of Defendant's New York condominium, representing the initial purchase price of $2,200,000 and the gain on the sale of the condominium of approximately $1,500,000. Defendant asserts that the gain of $1.5 million is untainted and not subject to forfeiture.[8] Defendant argues that neither the letter nor spirit of the law allows the Government a windfall by forfeiting undisputedly innocent proceeds. Defendant also argues that the asset was sold and was sitting in the First Republic Account and is traceable.

Defendant fails to cite the Court any authority for the proposition that he asserts, and has failed to meet his burden on production for the First Republic Account. There is no dispute, for purposes of this motion, that the condominium in question was purchased from income derived from the conduct described in the Indictments. The only question is, after receiving the proceeds from the sale, what happens to the investment gains realized by Defendant. The criminal forfeiture statute provides that the government may seize all property from illegal drug-trafficking activity including any investment returns, appreciation, and interest that are traceable to that property. *See* 21 U.S.C.

---

[8] The Court allowed the parties to file post-hearing briefs that addressed this legal issue of whether the gain on a tainted asset is subject to forfeiture.

§ 853(a)(1). "All proceeds obtained from unlawful conduct and property traceable to those proceeds are subject to criminal forfeiture." *United States v. Betancourt*, 422 F.3d 240, 250 (5th Cir. 2005); *see also United States v. Hawkey*, 148 F.3d 920, 928 (8th Cir. 1998). In *Betancourt*, the Fifth Circuit affirmed forfeiture of defendant's interest in $5,400,000 from Texas lottery winnings because the winning ticket was purchased with drug proceeds. *Betancourt*, 422 F.3d at 251. Furthermore, this case does not present a situation of commingled funds as suggested by Defendant. For purposes of this motion, the condominium was purchased from proceeds of the conspiracy. The proceeds from the sale of the condominium were placed in an account and appreciated in value. This is not a case where the proceeds from the sale were placed into an account that contained only legitimate monies. Defendant's argument is misplaced.

Therefore, the Court finds that Defendant has failed in his burden of production that the grand jury erred in finding probable cause to believe that the First Republic Account would be subject to forfeiture if the Defendant is convicted.[9]

**RECOMMENDATION**

The Court recommends that Defendant's Motion for Release and Exemption from Forfeiture Funds to Pay Attorney's Fees and Defense Costs (Dkt. #133) should be **DENIED**.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.

---

[9] In his post-hearing brief, Defendant appears to concede that if the condominium was an instrumentality of the offense, the growth of the value of the asset likely would not be subject to preconviction release. The Government responds that all of Defendant's funds were seized and indicted both as proceeds and instrumentalities. The Court agrees. The Indictment and First Superseding Indictment found probable cause that the funds were subject to forfeiture pursuant to 21 U.S.C. §§ 853(a)(1) and 853(a)(2).

§ 636(b)(1)(c).

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 20th day of January, 2010.**

_____
AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE